**BLANK ROME LLP**
Massimo F. D'Angelo (NJ ID No. 000882008)
(massimo.dangelo@blankrome.com)
1271 Avenue of the Americas
New York, New York 10020
(212) 885-5000

*Attorneys for Plaintiff RaaShaun Casey*
*a/k/a DJ Envy*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAASHAUN CASEY a/k/a DJ ENVY, | **Civil Action No.** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ANTHONY ROBINSON a/k/a TONY THE CLOSER, "ABC CORPORATIONS" 1-5, JOHN DOES 1-5 and JANE DOES 1-5, FICTITIOUS NAMES, WHOSE PRESENT IDENTITIES ARE UKNOWN, | Jury Trial Demanded |
| Defendants. | |

Plaintiff, Raashaun Casey a/k/a DJ Envy ("Plaintiff" or "Mr. Casey"), by and through his undersigned counsel, Blank Rome LLP, alleges the following against Anthony Robinson a/k/a Tony the Closer ("Defendant" or "Mr. Robinson") (Plaintiff and Defendant shall hereinafter collectively be referred to as the "Parties").

### PRELIMINARY STATEMENT

1.      In life, just as in business, reputation and integrity are amongst the most valuable things that we have. When someone's reputation is impugned, they could end up losing their

name and goodwill forever. Certainly, their extant and future business prospects – one's livelihood – are invariably damaged, as a result.

2.     In this action, the Defendant, knowingly and intentionally, spewed false slanderous and defamatory misinformation about the Plaintiff, which has, and continues to severely damage Plaintiff. Defendant engaged in this wrongful conduct for the purposes of increasing traffic on his social media sites for his own personal gain in the form of paid advertisements.

3.     However, thankfully the law protects against the spewers of falsified malicious and scandalous slander and defamation. As such, Plaintiff brings this suit to, *inter alia*, enjoin Defendant from making any further false defamatory or slanderous statements about Plaintiff, and for damages against Defendant to recover the losses that Plaintiff has sustained, resulting from Defendant's wrongful actions.

## NATURE OF THE ACTION

4.     This case arises from Defendant's false, defamatory, slanderous, and malicious assertions that Mr. Casey is a "thief," "criminal," and "scammer," who has perpetuated a "Ponzi scheme," and "stolen millions."

5.     Defendant has publicly and maliciously spread these false claims on his websites (https://tonythecloser.com/ and https://www.iclosedealstoo.com/), and through his sizable social media presence, including accounts on Instagram (https://www.instagram.com/tonythecloser), Twitter (@tonythecloser_), and YouTube (https://www.youtube.com/@TonyTheCloser).

6.     Defendant's social media accounts have more than 125,000 subscribers on YouTube, 364,000 followers on Instagram, and 13,000 followers on Twitter.

7.      Defendant uses his social media and websites to market his real estate investing "coaching" business and other services, find clients, and generate publicity and commentary, all for his own greed-driven pecuniary benefit.

8.      Defendant is a prolific poster, with tens of thousands of posts, comments, replies, hours of videos, and hundreds of thousands of engagements with potential customers and clients reaching all over the country, including, but not limited to, New Jersey.

9.      As part of his marketing strategy to drive engagement, increase views and followers, and to further his pecuniary interests by obtaining new customers for his real estate products, Defendant frequently makes posts insulting, attacking, or arguing with other public figures.

***The Pinas' Alleged Real Estate Scam***

10.      Cesar Pina ("Mr. Pina") and Jennifer Pina ("Ms. Pina") (Mr. Pina and Ms. Pina are collectively referred to herein as the "Pinas") are New Jersey residents who apparently broadcast themselves to the public as motivational speakers and entrepreneurs in the real estate business, focused on real estate development, investing, and "flipping" houses (much like Defendant, interestingly, who claims to have gotten rich being a real estate "wholesaler" who signs a contract of sale to purchase a property, and then sells or assigns that contract to another buyer to make a profit).

11.      As part of their business model, it appears that the Pinas promote their businesses through social media, including websites such as https://cesarpina.com/, social media such as Instagram (https://www.instagram.com/flipping_nj/ and https://www.instagram.com/jennitips), and make appearances on radio and television shows such as Good Morning America and Billboard Magazine.

3

12.     Mr. Casey, known to his radio listeners as DJ Envy, is a well-known DJ, record producer, and radio personality, and a host of the radio show "The Breakfast Club" on Power 105.1 FM New York.

13.     The Breakfast Club has been on the air since 2010, and The Breakfast Club's guests and attendees have included celebrities, sports figures, entrepreneurs, and thousands of other guests from all walks of life.

14.     Mr. Casey hosted the Pinas on "The Breakfast Club," one of their many media appearances, and featured them several times on his own social media accounts, on a few of his many interviews and discussions with guests and callers.

15.     Mr. Casey jointly held several educational seminars with the Pinas in 2018 and 2019, educating attendees about basic financial literacy and real estate investing concepts, and has attended at least two (2) public events where the Pinas, and many other individuals, were present.

16.     The Pinas have now been accused in several lawsuits of defrauding investors in an apartment building development project, and a real estate cryptocurrency investment.

17.     At least two of those lawsuits filed against the Pinas have also named Mr. Casey as a defendant, and allege, without any specific factual or meritorious basis, that Mr. Casey somehow "promoted" the Pinas' alleged fraud by jointly hosting real estate and financial literacy educational seminars, or otherwise appearing at public events attended by the Pinas, together with many other individuals, and by hosting the Pinas on The Breakfast Club.

18.     Since the claims that Mr. Casey is in some way connected to the real estate transactions in which the Pinas are alleged to have run a fraudulent scam are without any basis in

fact or law and are false, Mr. Casey has moved, or will be moving, to dismiss any complaints where he is a named defendant in connection with such transactions.

19.     Mr. Casey has been added as a party defendant in some of the cases involving the Pinas' alleged fraudulent scam for the purpose of sensationalizing those cases and generating publicity by including Mr. Casey, personally.

20.     Upon information and belief, one of the reasons behind Mr. Casey being added as an additional party defendant in the cases involving the Pinas' alleged real estate scam is because of Defendant's false and malicious statements that Mr. Casey is a "thief" who played part in a "Ponzi scheme."

21.     In fact, contrary to the allegations asserted in the Barone v. Pina action filed in the Superior Court of New Jersey, Chancery Division, Passaic County, bearing case docket no. PAS-C-76-23, the property ownership and company ownership documents publicly filed by two (2) of those investors establish that Mr. Casey never had any financial stake or involvement in those projects, whatsoever, which fact has also been confirmed by the Pinas.

22.     Upon information and belief, Defendant is a former car salesman and self-professed football player, who now, much like the Pinas – who on their website claim to have relationships with individuals ranging from famous music artists and other public figures and investors – promotes his own claimed real estate investing successes and relationships with celebrities, such as the rapper, Rick Ross, as a marketing tool to hawk various products, including real estate investment "coaching" and investment advice through his websites (https://tonythecloser.com/ and https://www.iclosedealstoo.com/), and on his social media channels, including Instagram (https://www.instagram.com/tonythecloser), Twitter (@tonythecloser_), and YouTube (https://www.youtube.com/@TonyTheCloser).

168564.00103/132510538v.3

23.    Defendant uses his websites and social media platforms to sell self-promotional real estate "coaching" materials under various names and through several different companies, including his "Rona Proof Master Class" course materials, which he sells for between $1,997 and $197 online.

24.    Defendant promotes and endorses various products such as weight-loss drinks, clothing, and other items on his social media platforms.

25.    Defendant also claims that he is a former criminal, was imprisoned as a result of "bad decisions" arising from addiction, presumably including his 2014, arrest for kidnapping and assaulting a woman, but he has found a new purpose in life by becoming a real estate investment guru, who is now happy to sell investment advice to entry-level real estate investors also looking to "change their situation."

26.    Defendant uses his social media accounts (which claim to have a combined total of more than 500,000 followers) to market his real estate investing "coaching" business and other services, find clients, and generate publicity and commentary to increase his exposure.

27.    To accomplish these goals, Defendant posts prolifically, with tens of thousands of posts, comments, replies, hours of "live" videos, dozens of pre-recorded videos on YouTube, and hundreds of thousands of engagements with potential customers and clients reaching all over the country, expressly including in New Jersey.

28.    Defendant frequently makes posts offering "discounts" or "sales" for the first followers or commenters to quickly comment on his posts and buy his real estate courses, and for new followers.

29.    As part of his marketing strategy to drive engagement, increase views and followers, and obtain new customers for his real estate investment products, Defendant

frequently makes posts insulting, challenging, or arguing with media and sports figures, who he "tags" in the posts to get a reaction that will increase his own publicity.

30.     Beginning on or about May 25, 2023, Defendant began posting about what he deemed a "scam" run by the Pinas, initially asserting in an Instagram "live" post (a live video broadcast to all of Defendant's Instagram followers) that the Pinas had been accused of scamming investors, and that the Pinas were only famous because they had been "promoted" on Mr. Casey's radio show.

31.     During his first May 25, 2023, "live" post regarding Mr. Casey, Defendant was careful to state that these were "allegations," and "claims," by investors who claimed to be defrauded by the Pinas, and not factual statements.

### A.   <u>DEFENDANT BEGINS DEFAMING MR. CASEY OVER INSTAGRAM</u>

32.     Later that day, on May 25, 2023, in a second Instagram "live" post, Defendant hosted Mr. Casey to discuss the allegations about the Pinas, and Mr. Casey explained to Defendant and his viewers what real estate investing and financial literacy topics were discussed at the seminars hosted by the Pinas, including: how to obtain an FHA loan, what real estate "wholesaling" is (the source of Defendant's self-claimed wealth), what a mortgage is, performing due diligence prior to making a real estate purchase, and other educational topics.

33.     Hosts and guests were not allowed to solicit investments from attendees during these seminars.

34.     Mr. Casey succinctly reiterated, on the Instagram "live" post, that "not one person" ever gave him any money to invest as a result of these seminars.

7

35.     Defendant then asked Mr. Casey, "as a public figure, how do you feel your [actions] played a part?" referring to the Pinas using Mr. Casey's status as a public figure to gain attention.

36.     Mr. Casey responded with the truth, which is that he has always warned every single attendee of the seminars to "do your homework" and to "never trust anybody" with an investment without performing due diligence and verifying the legitimacy of that investment.

37.     Mr. Casey gave the analogy that if he had a business partnership with someone, owning a barbershop, but that partner then committed criminal acts unrelated to the barbershop business, he would have no way of knowing about that and would not be responsible for the partner's unrelated criminal activities which are commonly referred to as "supervening" or "intervening" acts under the law.

38.     Defendant also asked whether Mr. Casey felt that he had any responsibility if an investor claimed that he only invested because, for example, he saw Mr. Pina, together with Mr. Casey at the same office building.

39.     Mr. Casey reiterated that he never solicited any investments into the Pinas' ventures, and that the entire point of his seminars, which always had multiple hosts and speakers, was that the public needs to be educated about real estate investing to perform the proper level of due diligence so that they could ultimately make sound investment decisions.

40.     Defendant was not getting the inflammatory reaction he hoped for to generate controversy, and so he then shifted to personally lodging *ad hominem* attacks against Mr. Casey, accusing him of manipulation, and claiming that Mr. Casey was attacking Defendant's business model by lumping him into the category of real estate gurus who make money by selling real estate investing courses that have no actual benefit.

41.     Of course, Defendant does make money by pushing real estate investing courses for first-time real estate investors, and his courses do not appear to include any type of income disclosure from the customers who pay for them, instead focusing only on "testimonials" from a handful of individuals who claim to have made money.

42.     Conversely, at all relevant times, Mr. Casey's seminars had always stressed the importance of due diligence and skepticism of real estate investments which seemed too good to be true.

43.     A skeptical customer would likely wonder whether Defendant's own business model seems too good to be true, based on marketing to potential customers that they could earn $240,000 per year using only their phone, an internet connection, and Defendant's course: "Did you know that you could make $20,000 a month in real estate without, buying or owning any real estate #ronaproof[.]"

44.     Mr. Casey ended the Parties' May 25, 2023, call by stating that he hoped that all investors who were owed money by the Pinas recovered their money.

## B.   **DEFENDANT BROADCASTS AN ILLEGALLY OBTAINED WIRETAP**

45.     Upon information and belief, Defendant then played a recording of a telephone call between himself, and Mr. Casey, placed from Florida without Mr. Casey's knowledge or consent to try to "prove" that Mr. Casey was somehow aware of the fraud allegedly conducted by the Pinas.

46.     Upon information and belief, this illegal recording was obtained in violation of Florida Statutes Chapter 934.03, because Florida is a "two-party" consent state, and Mr. Casey did not consent to his private telephone call being recorded in Florida, or subsequently played on Defendant's Instagram live post in Florida or New Jersey.

168564.00103/132510538v.3

47.    Violating Florida Statutes Chapter 934.03 is a third-degree felony under Florida law.

48.    The illegal recording played by Defendant simply reveals that Mr. Casey privately stated exactly the same thing that he publicly stated – that he had no involvement with any of the Pinas' real estate investments which had allegedly defrauded investors, that he never accepted any other individual's money to invest in a single real estate investment, that he was worried that his own investment with Mr. Pina in a separate project (a conversion of a school into an apartment building), was in jeopardy if these allegations were true, and that if the allegations against the Pinas turned out to be true, he would be furious and would be the first to call them out on his syndicated radio show.

49.    Mr. Casey also opined on the call that if Mr. Pina had begun defrauding investors, it might be because he had a gambling addiction – the same problem Defendant has admitted led to his own imprisonment and a foreclosure of his house.

50.    Mr. Casey also stated that he had spoken with Mr. Pina that day about the single investment made by Mr. Casey with Mr. Pina, the renovation of a vacant school located at 385-391 Totowa Avenue, Paterson, New Jersey, to convert it into apartments, and that he feared that Mr. Pina may have also defrauded him, because that property was now facing a foreclosure action.

### C. DEFENDANT MALICIOUSLY DEFAMES MR. CASEY TO INCREASE HIS SOCIAL MEDIA FOLLOWERS AND SELL REAL ESTATE COURSES

51.    After Defendant played the illegal recording of Mr. Casey's call with Mr. Robinson, Defendant then proceeded to conclude his "live" posting by beginning to maliciously make false statements of fact about Mr. Casey, including the following:

    a.   "I never said Envy took a […] dime"

    b.  "I said Envy knew what was going on"

    c.  "I never said Envy stole a […] dollar"

    d.  "but I said he knew exactly what was going on and he didn't say a […] thing about it"

52.    From these statements, Defendant clearly articulated to his hundreds of thousands of followers in New Jersey and across the country the false allegation that Mr. Casey was somehow aware of the alleged theft by the Pinas from their investors, before the lawsuits against the Pinas were filed.

53.    At this point, Defendant falsely claimed that Mr. Casey was aware of the Pinas' alleged theft of investors' money but was careful to not assert that Mr. Casey personally stole money from any investors.

54.    But over the next two (2) months, as Defendant's false statements drove increased engagement with his potential customer base on social media, he expanded the scope of his false statements, and began falsely asserting that Mr. Casey had, in fact, "scammed," "stolen," and was facing a criminal "RICO" charge for the Pinas alleged theft.

55.    Immediately after the Instagram live post, Defendant posted on Twitter that, "DJ Envy got mad I said his real estate seminars are trash[.]"

56.    Defendant then tweeted on May 28, 2023, "I hate being questioned when I'm not doing shit wrong.  Shit just offends tf outta [sic] me."

57.    On May 28, 2023, Defendant posted a video containing testimonials for his own real estate course products, comparing them to Mr. Casey, and asserting that "DJ Envy & Flipping NJ I got $1,000,000 [] Bet my real estate students are more successful and ain't [sic] been scammed[.]"

58.     Defendant's social media presence grew as he continued to make posts about "exposing" scams, and he embarked on a personal vendetta to falsely label Mr. Casey as a "thief" and "scammer" who had personally stolen investors' money.

59.     This became a common pattern across all of Defendant's social media platforms over the coming months – he would persistently defame Mr. Casey, accuse him of criminal acts such as thefts, state that he had committed fraud, and then generate thousands of reactions, comments, and views based on those posts.

60.     Defendant would then immediately shift to promoting his own real estate investing "course" and other products, either in the comments of the exact same posts, or marketing posts advertising his courses and merchandise immediately afterwards.

61.     On May 30, 2023, Defendant posted on Twitter that "I been called a clout chaser by 4 scammers but ain't been wrong yet[.]"

62.     Throughout June 2023, Defendant continued to refine his new business model and increased social media success as an enemy of "scammers," posting attacks against alleged "scammers," and then quickly advertising his real estate courses.

63.     On June 23, 2023, Defendant posted on Instagram "Tony The Closer Top Ten List of Scammers 2023 drops [] today #RealEstateRico #NoRefundsNoPeace HowtoCatchaScammer."

64.     On June 29, 2023, Defendant posted an updated list of "Tony The Closer Top 10 Scammer List," on Twitter and Instagram, generating thousands of likes, more than 1,300 comments, and hundreds of thousands of "views" across both platforms.

65.     On July 10, 2023, Defendant posted on the Meta Threads social media platform, "They called me a clout chaser but all the shit I was saying was true!!!![,]" and then reposted that message on his Instagram account.

66.     On July 12, 2023, Defendant posted on the Facebook Threads social media platform, "Go back now and look at every scammer I called out and see which one I wasn't right about. I'll wait… [,]" and then reposted that message on his Instagram account.

67.     On July 19, 2023, Defendant posted on Instagram about the "DJ Envy Cesar Scam" and alleged that Mr. Casey had stolen $750,000 in settlement funds from a victim of Jeffrey Epstein.

68.     On July 19, 2023, Defendant retweeted his "Tony The Closer Top 10 Scammer List," now featuring at the top spot "DJ Envy & Flippin NJ & JenniTips[.]"

69.     The list was then posted on Defendant's Instagram account the next day.

70.     On or about July 20, 2023, Mr. Casey's attorneys served a cease-and-desist letter upon Defendant, demanding that he stop making these false and defamatory statements about Mr. Casey.

71.     Defendant posted a copy of the July 20, 2023, cease and desist letter on his social media, and commented "Looks like Envy gone Sue me[.]"

72.     Defendant then doubled down on his claim that his defamatory statements regarding Mr. Casey were completely accurate, responding to a question about how the first amendment would protect him against defamation claims by asking, "where's the lie[?]"

73.     On July 26, 2023, Defendant retweeted his "Tony The Closer Top 10 Scammer List" sill featuring at the top spot "DJ Envy & Flippin NJ & JenniTips[.]"

74.     Defendant then posted that tweet on Instagram, adding that his "criminals list has been updated[.]"

75.     On July 27, 2023, Defendant posted on Twitter that "DJ Envy bout to get hit with the Real Estate RICO[.]"

76.     By July 28, 2023, Defendant had descended even further into a malicious smear campaign, replete with defamatory falsehoods, bizarre racist commentary, and personal insults, and posted an almost one (1) hour long Instagram "live" video to his hundreds of thousands of followers filled with false, malicious, and completely inaccurate claims that Mr. Casey had committed theft.

77.     Key malicious falsehoods broadcast by Defendant in this particular Instagram posting include the following statements:

a.  "I just love the fact that the [n****] Raashaun Casey, Raashaun Casey, is going to jail."

b.  "I'm ready to talk some shit tonight."

c.  "That [n****] DJ Envy done stole these peoples' money with goddamn Flipping NJ fatass and them [n****s] gone get away."

d.   "[Mr. Casey] is about to get hit with the real estate RICO"

e.  "I just told you this [n****] stealing"

f.  "It's always them goddamn light-skinned [n****s], boy . . . this [n****] could have just sat back and did honest ethical business and made money for a lifetime but he done let this little fat [n****] and his wife come and get in his goddamn business and now his shit is in shambles."

g.  "Hell yeah I want to see that [n****] in jail."

     h.   "You steal millions of dollars I want him in jail."

     i.   "There ain't gonna be no Breakfast Club.  That gonna be my show."

78.    After posting another half-dozen assertions that Mr. Casey was a "scammer" and "Ponzi-schemer" over the next few days to generate additional publicity and earning potential, Defendant then posted the ubiquitous advertisement for another "flash sale" opportunity to purchase his real estate course for the low price of $197, advertising that he already has "2,000 active students" in his investing course.

79.    The false statements regarding Mr. Casey continue to generate substantial publicity for Defendant, creating opportunities to reach new customers and generate additional income for Defendant and his companies through the sale of his real estate "guru" investment courses and other services to "first time" buyers who want to earn "$20k" per month.

80.    Defendant's false statements about Mr. Casey being a "thief" and being part of a "Ponzi scheme," has resulted in Mr. Casey being sued directly as an additional party defendant in cases where investors have brought suit against the Pinas for an alleged real estate scam.

81.    As recently as August 2, 2023, Defendant falsely asserted on Twitter that "Raashaun Casey & Cesar Pina Real Estate Ponzi Scheme Leaves Investor in Financial Ruins After 350k Investment," and Defendant also incredibly asserted that an investor had committed suicide after being defrauded by Mr. Casey.

82.    It is clear that Defendant will continue to make knowingly false, malicious, and defamatory statements about Mr. Casey across his social media channels, because those statements generate publicity, increase his social media following, and further his financial interests by allowing him to increase engagement with new customers and make money selling real estate "courses" to new viewers.

83.     Mr. Casey has been forced to bring this action to correct the record and turn off the firehose of malicious false statements by Defendant, and protect his reputation and business relationships, current and future, from the ongoing harm caused by Defendant's intentional actions.

## JURISDICTION

84.     The Parties' citizenship is diverse and the amount of money in controversy is in excess of $75,000, thus conferring diversity jurisdiction over this matter.

85.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

## VENUE

86.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

87.     Plaintiff Raashaun Casey is a New Jersey resident residing in New Jersey.

88.     Defendant Anthony Robinson is, upon information and belief, a North Carolina resident, with a principal place of business located at 13200 Strickland Road, Raleigh, North Carolina.

89.     Defendants "ABC Corporations 1-5," these names being fictitious, are entities with identities that cannot be ascertained as of the filing of this complaint, certain of which are successors to, predecessors of, or are otherwise related to Defendant and/or other entities that slandered or defamed Plaintiff, or are in any way responsible for the damages resulting from such slander or defamation of Plaintiff.

90.     Defendants "Jane and John Does 1-5," these names being fictitious, are individuals with identities that cannot be ascertained as of the filing of this complaint, certain of

whom are successors to, predecessors of, or are otherwise related to Defendant and/or other individuals that slandered or defamed Plaintiff, or are in any way responsible for the damages resulting from such slander or defamation of Plaintiff.

## COUNT I:

## Defamation/Slander

91.     Plaintiff incorporates by reference paragraphs 1 through 90 of this Complaint, as if fully set forth therein.

92.     There is no basis in fact for Defendant's endless stream of malicious false statements outlined above, falsely asserting for months that Mr. Casey was a "thief," "stole money," "scammed," "defrauded," participated in or was aware of a "Ponzi scheme," or was "going to jail."

93.     There was never any basis in fact for any of these accusations or inferences.

94.     The statements made by Defendant concerning Mr. Casey were malicious, reckless, and/or negligently made, and had the purpose and effect of damaging and injuring Mr. Casey's good name and reputation in the eyes of the public, and Mr. Casey's business interests and partners.

95.     The statements made by Defendant were broadcast to thousands of third parties by Defendant using his social media platforms, including without limitation Defendant's accounts and/or handles on YouTube, Instagram, and Twitter.

96.     The statements made by Defendant concerning Mr. Casey were defamatory and slanderous *per se*.

97.     The statements made by Defendant concerning Mr. Casey were not justified nor were they privileged communications.

98.     Prior to these communications by Defendant, Mr. Casey had maintained and enjoyed a distinguished and unblemished reputation for honesty and integrity with the public and with his business interests and partners.

99.     Mr. Casey's reputation has been irreparably harmed by the defamatory statements made by Defendant and by the wrongful and illegal actions falsely attributed to Mr. Casey by Defendant.

100.    Mr. Casey has suffered damages and is entitled to recover compensatory damages and punitive damages from Defendant as a result of the malicious and reckless false statements and accusations Defendant made against him.

101.    Based on the forgoing, Mr. Casey is substantially likely to prevail on the merits in this action.

102.    Mr. Casey will be substantially and irreparably harmed without injunctive relief to address the defamation by Defendant.

103.    The equities strongly favor Mr. Casey, and any harm to Defendant will be greater if the restraints were denied than Defendant would suffer if the restraints were granted.

## COUNT II:

### Claim for Tortious Interference with Prospective Business Relationships

104.    Plaintiff incorporates by reference paragraphs 1 through 103 of this Complaint, as if fully set forth therein.

105.    Mr. Casey had a reasonable expectation of economic gain in connection with anticipated business arising from his radio show, and other business ventures, which includes Mr. Casey's public endorsements of products, services, events, and other ventures based upon Mr. Casey's reputation for honesty and integrity with the public and with his business partners.

106.    Defendant's false and defamatory statements concerning Mr. Casey have damaged Mr. Casey's reputation for honesty and integrity with the public and with his business partners.

107.    This has harmed Mr. Casey's prospective economic and/or contractual relationships with a number of these potential business partners.

108.    Defendant, by repeatedly broadcasting false and defamatory statements maliciously and/or recklessly intended to harm Mr. Casey's reputation and public image, has intentionally, and without justification, interfered with Mr. Casey's prospective economic and/or contractual relationships.

109.    Upon information and belief, Defendant has compounded this damage by directly contacting Mr. Casey's prospective business partners to seek to harm and/or destroy Mr. Casey's prospective economic and/or contractual relationships.

110.    Defendant's interference has caused the loss of that prospective gain.

111.    This injury has caused substantial damages to Mr. Casey.

112.    Mr. Casey is entitled to recover compensatory damages and punitive damages from Defendant as a result of Defendant's interference with Mr. Casey's prospective business relationships.

168564.00103/132510538v.3

## COUNT III:

## Claim for Tortious Interference with Business Relationships

113.    Plaintiff incorporates by reference paragraphs 1 through 112 of this Complaint, as if fully set forth therein.

114.    Mr. Casey has existing ventures with a number of businesses, including Mr. Casey's public endorsements of products, services, events, and other ventures based upon Mr. Casey's reputation for honesty and integrity with the public and with his business partners.

115.    Defendant's false and defamatory statements concerning Mr. Casey have damaged Mr. Casey's reputation for honesty and integrity with the public and with his business partners.

116.    This has harmed Mr. Casey's economic and/or contractual relationships with his existing business partners by reducing the value of Mr. Casey's endorsement as a direct and proximate result of Defendant's malicious and/or reckless harm to Mr. Casey's reputation and public image.

117.    Upon information and belief, Defendant has compounded this damage by directly contacting Mr. Casey's existing business partners to seek to harm and/or destroy Mr. Casey's current economic and/or contractual relationships.

118.    Defendant, by repeatedly broadcasting false and defamatory statements maliciously and/or recklessly intended to harm Mr. Casey's reputation and public image, has intentionally, and without justification, interfered with Mr. Casey's economic and/or contractual relationships.

119.    Defendant's interference has substantially damaged Mr. Casey's businesses.

120.    This injury has caused damages to Mr. Casey.

168564.00103/132510538v.3

121.    Mr. Casey is entitled to recover compensatory damages and punitive damages from Defendant as a result of Defendant's interference with Mr. Casey's business relationships.

## COUNT IV:

## Claim for Invasion of Privacy

122.    Plaintiff incorporates by reference paragraphs 1 through 121 of this Complaint, as if fully set forth therein.

123.    Defendant's publication on social media of an illegally recorded telephone call between Mr. Casey and Defendant constitutes an invasion of Mr. Casey's privacy.

124.    Upon information and belief, Defendant was aware, or should have been aware, that this recording was obtained in violation of Florida Statutes Chapter 934.03, because Florida is a "two party" consent state, and Mr. Casey did not consent to his private telephone call being recorded, or subsequently played on Defendant's Instagram live post on May 25, 2023.

125.    By broadcasting the recording to third parties over his social media, Defendant tortiously invaded Mr. Casey's privacy through intrusion.

126.    By broadcasting the recording to third parties over his social media, Defendant tortiously invaded Mr. Casey's privacy through the public disclosure of private facts.

127.    By broadcasting the recording to third parties over his social media, Defendant also tortiously invaded Mr. Casey's privacy by placing Mr. Casey in a false light in the public eye.

128.    Defendant's invasion of Mr. Casey's privacy was intended to harm Mr. Casey's reputation and public image and has interfered with and damaged Mr. Casey's economic and/or contractual relationships.

168564.00103/132510538v.3

129.     As a result of this tortious conduct, Defendant has caused damages to Mr. Casey.

130.     Mr. Casey is entitled to recover compensatory damages and punitive damages from Defendant as a result of Defendant's interference with Mr. Casey's prospective business relationships.

168564.00103/132510538v.3

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Raashaun Casey a/k/a DJ Envy, respectfully requests that the Court enter judgment in his favor and against Defendant, Anthony Robinson, and to include in its judgment the following damages:

a.  an award of compensatory damages against defendant Mr. Robinson for having defamed plaintiff Mr. Casey;

b.  an award of punitive damages against defendant Mr. Robinson for the malicious, reckless, and unjustified defamatory statements about Mr. Casey;

c.  an award of temporary, preliminary, and/or permanent injunctive relief as against Mr. Robinson and in favor of Mr. Casey;

d.  an award of compensatory damages against defendant Mr. Robinson for having tortiously interfered with Mr. Casey's prospective business;

e.  an award of punitive damages against defendant Mr. Robinson for having tortiously interfered with Mr. Casey's prospective business;

f.  an award of compensatory damages against defendant Mr. Robinson for having tortiously interfered with Mr. Casey's business;

g.  an award of punitive damages against defendant Mr. Robinson for having tortiously interfered with Mr. Casey's business;

h.  an award of compensatory damages against defendant Mr. Robinson for tortiously invading Mr. Casey's privacy;

i.  an award of punitive damages against defendant Mr. Robinson for tortiously invading Mr. Casey's privacy; and

j.  such other legal and equitable relief as may be just and proper under the circumstances.

BLANK ROME LLP

By: **/s/ Massimo F. D'Angelo**
Massimo F. D'Angelo
1271 Avenue of the Americas
New York, New York 10020
(212) 885 - 5582
massimo.dangelo@blankrome.com

DATED:      August 10, 2023